LAW OFFICES
# FISHMAN & CALLAHAN
A PROFESSIONAL CORPORATION
120 EAGLE ROCK AVENUE
EAST HANOVER, NEW JERSEY 07936
(973) 560-9000
FAX (973) 560-0060
E-mail: scott@fishman-callahan.com

STANLEY P. FISHMAN *^
TRACY G. CALLAHAN* ^
SCOTT D. SAMANSKY=
ROY F. VIOLA, JR >
CHRISTOPHER E. McINTYRE
ROBIN SAMMER BEHN*
DANIELLA S. KREINER ^^
LAUREN B. DiSARNO
STEPHEN R. DANEK
APARNA P. KOTHARI#
MICHAEL N. DORFMAN *
JAYNE F. MONAHAN "
DAVID M. BERKLEY **
WILLIAM E. CAHILL>>
MARC ELLIOT STIEFELD <
ANNA MELHEM<

OF COUNSEL
T. ALAN WYLE<
EVAN EDWARD LANE >
^CERTIFIED BY THE SUPREME COURT OF
NEW JERSEY AS A CIVIL TRIAL ATTORNEY

NEW YORK OFFICE
1 BLUE HILL PLAZA
PO BOX 1535
PEARL RIVER, NY 10965
(845) 620-1441
FAX (845) 620-1432

SOUTH JERSEY OFFICE
1847 ROUTE 70 EAST
CHERRY HILL, NJ 08003
(856) 751-9205
FAX (856) 751-9001

* NJ & NY BARS
= NJ&DC BARS
> NJ&PA BARS
# NJ&CT BARS
^^ NJ, NY & FL BARS
< NY BAR
" NY & CA BARS
** NY&FL BARS
>> NY&LA BARS

February 26, 2004

HAND DELIVERED/ELECTRONIC FILING

Honorable Faith S. Hochberg
United States District Court Judge
United States District Court
U.S. Post Office and Courthouse Building
Newark, New Jersey 07101

  Re: Mardyks v. Kristoff, et als.
     Civil Action No. 01-3785 (F.S.H.)
     Our File No. PL1-174

Dear Judge Hochberg:

This law firm represents the plaintiff, Ronnie Mardyks, in connection with the above captioned matter. It is our understanding defendant filed a Notice of Motion in Limine returnable before Your Honor. Though this matter had been scheduled for March 9, 2004, same has been adjourned without new date. Accordingly, plaintiff believed the defendant's in limine motion would be adjourned with a new date scheduled. Hence, no opposition had been filed At this time, please accept the following letter memorandum in lieu of a more formal brief in opposition to defendant's motion. Plaintiff respectfully requests oral argument.

We note, plaintiff submitted a trial brief setting forth her position regarding the issue of damages. Additionally, as part of its pretrial submissions, plaintiff forwarded to the Court the reports of her neurosurgeon, Dr. Otakar Hubschmann. Plaintiff relies on these documents as part of her opposition to the motion.

## PLAINTIFF'S RESPONSE TO THE STATEMENT OF FACTS

On October 10, 1997, plaintiff was stopped for a traffic light at the intersection of Mt. Pleasant Avenue and Pleasant Valley Way in West Orange, New Jersey. A vehicle owned by the U.S. Postal Service and operated by its employee, Thomas Kristoff, who was acting in the scope of

his employment, skidded into and struck the rear of plaintiff's vehicle. Though plaintiff did not initially complain of pain, she sought treatment for pain in her leg with Dr. Richard Solomon on March 28, 1998. She continued to treatment conservatively, but after the treatment did not yield any improvement, she presented to other physicians. Throughout that time, plaintiff recalled communicating complaints of pain in her neck to the physicians, but the neck area was not her primary concern. Instead, plaintiff focused on the leg pain. In fact, the first documented complaint of pain to her neck is to her general practitioner on October 20, 1998.

On May 17, 1999, plaintiff presented to Dr. Otakar Hubschmann. Following several MRIs, Dr. Hubschmann performed two separate surgeries. On December 7, 1999, Dr. Hubschmann performed a lumbar surgery from which he found severe foraminal stenosis at L5-S1 with synovial cyst and foraminal stenosis of L4-5. Dr. Hubschmann actually performed a hemilaminectomy at L5.

Due to the continued complaints of pain in her neck, it was necessary for Dr. Hubschmann to perform a second surgery. On April 13, 2003, Dr. Hubschmann performed an anterior cervical discectomy and fusion at C5-C6 and C6-C7.

Dr. Hubschmann has issued several reports pertaining to his treatment, diagnosis, prognosis and causal relationship of the injuries to the accident. More specifically, Dr. Hubschmann has opined to a reasonable degree of medical probability plaintiff's injuries and surgical procedures were causally related to the automobile accident of October 10, 1997.

## THE ACCIDENT OF OCTOBER 10, 1997 WAS THE PROXIMATE CAUSE OF PLAINTIFF'S DAMAGES

As set forth above, Dr. Hubschmann clearly states in his reports the opinion to a reasonable degree of medical probability, plaintiff's injuries and surgical procedures are causally related to the automobile accident of October 10, 1997. Copies of his reports are attached collectively hereto as Exhibit A. According to Dr. Hubschmann, the diagnoses, treatment and recommendations including for two surgeries are all based on the objective clinical evidence referenced in his reports.

Defendant maintains simply because it has obtained a report from Dr. Howard Blank opining plaintiff's injuries were not proximately caused by the accident, that this is sufficient for its motion to be granted. Plainly, this case is not to be decided on the basis of reports. At this point, plaintiff relies on a noted neurosurgeon, Dr. Hubschmann, whose opinions do not concur with that of defendant's expert, Dr. Blank.

Simply stated, prior to the motor vehicle accident, Ronnie Mardyks was symptom free. She had no prior neck or back injury, nor did she suffer from any ailments to these areas of her body. Subsequent to the motor vehicle accident, Ms. Mardyks experienced great pain for which she sought medical treatment.

The pain resulting from the accident did not manifest until a short time after the event. Any delay in seeking treatment, and an opinion by Dr. Blank of a degenerative condition are not sufficient to warrant the relief which defendant now seeks.

Plaintiff points out Dr. Hubschmann actually treated her including two surgeries. Hence, he had a first hand opportunity to actually see the conditions. Based on all of the objective information, as well as subjective complaints of the patient, he was able to opine as to a causal relationship between the injuries, treatment and accident. Dr. Blank on the other hand, only examined plaintiff for a short period of time, and did not provide any treatment.

For all of these reasons, as well as those which will be presented at the time of trial, plaintiff respectfully requests this Court deny defendant's motion.

### PLAINTIFF MAY COLLECT DAMAGES FOR LOST WAGES

As a result of the accident and injuries sustained, plaintiff has lost her employment with I. Lehrhoff & Company. Due to the pain she suffered, plaintiff had difficulty obtaining gainful employment. Her condition has prevented her from obtaining a position for any duration. This information was provided to defendant during the course of discovery.

Ms. Mardyks will testify during trial her injuries made it impossible to perform her work as she had prior to the accident. Although she obtained certain temporary positions, she has been hampered by an inability to perform the various tasks associated with her job responsibilities. As a result, Ms. Mardyks has been caused to incur lost wages for which she may testify at the time of trial.

For these reasons, plaintiff respectfully requests the Court deny defendant's relief with respect to lost wages.

### CONCLUSION

For all of the foregoing reasons, plaintiff, Ronnie Mardyks, respectfully requests this Court find material issues are in dispute such that defendant's motion in limine must be denied as a matter of fact and law.

Thank you for your consideration in this regard.

Respectfully submitted,

SCOTT D. SAMANSKY
scott@fishmancallahan.com

SDS:mp
Enclosure
c: Susan Handler-Menahem, Esq.(Via fax 973-297-2010)

# EXHIBIT A

JOSEPH M. KOZIOL, M.D., F.A.C.S.

101 Old Short Hills Road
West Orange, New Jersey 07052

NEUROLOGICAL SURGERY

Phone (973) 325-6550
Fax   (973) 325-6545

RE: MARDYKS, Ronnie

Ms. Mardyks was evaluated in our office on May 17, 1999. She is a 54 year old female who presented with the chief complaint of right buttock, thigh and calf pain radiating into the right big toe and second toe. Recently the pain increased significantly and she has some low back pain. This started after a car accident on October 10, 1997 and has progressed to the present symptoms. She has seen several physicians, has had physical therapy and six epidural steroid injections, chiropractic therapy. After the first treatment she improved but it lasted only a few days and subsequent treatments did not affect it. She noted no bowel/bladder symptoms and no vaginal/rectal anesthesia. Her past medical history is significant for high blood pressure for which she takes medications and hypothyroidism. She is allergic to Penicillin.

Physical examination revealed moderate paraspinal muscle spasm with positive mechanical back signs. She demonstrated no motor weakness or sensory loss to pin prick except decreased on the right side. She had no reflex change, knee jerks were 1+ and equal while the ankle jerks were 2+ and equal. There was no evidence of myelopathy. She was able to heel, toe and tandem walk. Her MRIs showed disc degeneration with subligamentous HNP at L5/S1 (second disc space from below) and probably unilateral spondylolisthesis at left L5/S1. SPEC showed focal abnormality right L5/S1.

My impression is that Ms. Mardyks has right L5/S1 radicular symptoms with probable instability on disease of posterior joints L5/S1. I recommended a new MRI at Saint Barnabas Medical Center, CT scan L4-S1 and AP/lateral flexion/extension lumbar spine films after which I will reevaluate for surgical therapy possibly including fusion.

*Otakar R. Hubschmann M.D. /sw*

Otakar R. Hubschmann, M.D., P.A.

ORH:sw

Dictated by Dr. Hubschmann
Signed by his secretary to
avoid delay in mailing

OTAKAR R. HUBSCHMANN, M.D., P.A.
JOSEPH M. KOZIOL, M.D., F.A.C.S.

101 Old Short Hills Road
West Orange, New Jersey 07052

NEUROLOGICAL SURGERY

Phone (973) 325-6732
Fax   (973) 325-6545

RE:   MARDYKS, Ronnie

Ms. Mardyks was seen in follow up on June 7, 1999. She returns with increased symptoms in the right leg. Her new MRI shows a mass at right L5/S1 - HNP vs. spinal cyst. The CT scan shows probable HNP in the right L5/S1 level possibly extending beyond the foramen - far lateral HNP. This however cannot be confirmed on MRI. Flexion/extension shows mild subluxation in flexion at L4/L5 and L5/S1. SPEC scan shows increased activity in the right L5/S1 joint. There is no evidence of spondylosis or spondylolisthesis.

My impression is that Ms. Mardyks' symptoms are compatible with right sided facet joint disease vs. spinal cyst or extensive far lateral HNP. I recommended exploration of right L5/S1 region with possible far lateral disc exploration if no spinal cyst is found. All risks and uncertainties were discussed with the patient and her mother including the possibility of needing a fusion in the future, lack of improvement and the uncertainty of diagnosis. Facet joint injection is an option but not a good one in my opinion. That was discussed and offered as well if she prefers more conservative approach.

*[signature]*

Otakar R. Hubschmann, M.D., P.A.

ORH:sw

Dictated by Dr. Hubschmann
Signed by his secretary to
avoid delay in mailing

**OTAKAR R. HUBSCHMANN, M.D., P.A., F.A.C.S.**
**JOSEPH M. KOZIOL, M.D.**
**ARTHUR M. GILMAN, M.D.**
Suite 409
101 Old Short Hills Road
West Orange, New Jersey 07052

NEUROLOGICAL SURGERY

Phone  (973) 322-6732
Fax    (973) 322-6545

February 2, 2000

Roy F. Viola, Jr.
FISHMAN & CALLAHAN
120 Eagle Rock Avenue
East Hanover, New Jersey 07936

RE:  Ronnie Mardyks
Your File No. PL1-174

Dear Mr. Viola:

Ms. Mardyks was evaluated in our office on May 17, 1999. She was 54 years of age at that time and presented with the chief complaint of right buttock, thigh and calf pain radiating into the right big toe and second toe. Recently the pain increased significantly and she had some low back pain. This started after a car accident on October 10, 1997 and had progressed to the present symptoms. She had seen several physicians, had had physical therapy and six epidural steroid injections, as well as chiropractic therapy. After the first treatment she improved but it lasted only a few days and subsequent treatments did not affect it. She noted no bowel/bladder symptoms and no vaginal/rectal anesthesia. Her past medical history is significant for high blood pressure for which she takes medications and hypothyroidism. She is allergic to Penicillin.

Physical examination revealed moderate paraspinal muscle spasm with positive mechanical back signs. She demonstrated no motor weakness or sensory loss to pin prick except decreased on the right side. She had no reflex change, knee jerks were 1+ and equal while the ankle jerks were 2+ and equal. There was no evidence of myelopathy. She was able to heel, toe and tandem walk. Her MRIs showed disc degeneration with subligamentous HNP at L5/S1 (second disc space from below) and probably unilateral spondylolisthesis at left L5/S1. SPEC showed focal abnormality right L5/S1.

My impression was that Ms. Mardyks had right L5/S1 radicular symptoms with probable instability on disease of posterior joints L5/S1. I recommended a new MRI at Saint Barnabas Medical Center, CT scan L4-S1 and AP/lateral flexion/extension lumbar spine films and reevaluation.

Ms. Mardyks was seen in follow up on June 7, 1999. She returned with increased symptoms in the right leg. Her new MRI showed a mass at right L5/S1 - HNP vs. spinal cyst. The CT scan showed probable HNP in the right L5/S1 level possibly extending beyond the foramen - far lateral HNP. This however could not be confirmed on MRI. Flexion/extension x-rays showed mild subluxation in flexion at L4/L5 and L5/S1. SPEC scan showed increased activity in the right L5/S1 joint. There was no evidence of spondylosis or spondylolisthesis.

My impression was that Ms. Mardyks' symptoms were compatible with right-sided facet joint disease vs. spinal cyst or extensive far lateral HNP. I recommended exploration of right L5/S1 region with possible far lateral disc exploration if no spinal cyst was found. All risks and uncertainties were discussed with the patient and her mother including the possibility of needing a fusion in the future, lack of improvement and the uncertainty of diagnosis. Facet joint injection was an option but not a good one in my opinion. That was discussed and offered as well if she preferred a more conservative approach.

Ms. Mardyks was called because an MRI of the cervical spine was performed due to her reported pain and numbness in the neck and left hand in preparation for her lumbar surgery. Upon questioning the patient she dated the onset of her neck symptoms to her car accident on October 10, 1997 and she had been treated with conservative measures with some effect. Physical examination revealed no motor weakness and she was able to heel, toe and tandem walk. Reflexes were equivocal in the triceps jerks bilaterally and 1+ in the biceps jerks. Her MRI showed significant HNP at C6/C7 with cord effacement and HNP/osteophytes at C5/C6. My impression was that Ms. Mardyks has left C7 radiculopathy with no significant neurological deficit and no myelopathy. She felt that her right leg symptoms had increased but she wanted to delay her lumbar surgery. She was to proceed with physical therapy for the neck.

She returned on November 22, 1999 with no significant change. Her neck symptoms were controllable with Lodine but her right left pain significant affected her function. I recommended a repeat MRI of the lumbar spine with gadolinium after which I would reevaluate for surgery for her lumbar spine due to intractable pain.

Ms. Mardyks returned on December 6, 1999. Her new lumbar MRI was essentially unchanged showing a mass in the right L5 foramen at L5/S1 spinal cyst vs. extended HNP vs. tumor (least likely). It was decided to proceed with the lumbar surgery. All issues including risks were discussed again.

Ms. Mardyks underwent hemilaminectomy at L5 with foraminotomies L5/S1 and L4/L5 and removal of synovial cyst right L5/S1, nerve root decompression L5/S1. She tolerated the surgery well and was discharged to home.

On January 10, 2000 she returned with no leg pain and only mild back pain. Her wound was well healed. She had some neck pain and numbness in both arms at night, which disappeared in the morning. There was no change in her neurological examination.

On March 6, 2000 she returned with increased neck pain and radiation into the left arm and hand. She was dropping objects and felt the hands were weaker. There was no change on her neurological examination. Her low back and lower extremity pain had improved significantly. She was to have a new cervical MRI in consideration for surgery.

Ms. Mardyks returned on March 27, 2000 with a cervical MRI showing large HNP at C6/C7 central/lest and moderate HNP at c5/C6. There was also some small protrusion at C4/C5 and moderate HNP at c5/C6 and some small protrusion at C4/C5 and reversal of cervical spine curvature on plain x-rays. I recommended anterior cervical discectomy and fusion at C5/C6 and c6/C7 with allograft and plating. All risks including paralysis, hoarseness and the possibility of needing further surgery was discussed in detail with the patient.

On April 13, 2000 Ms. Mardyks underwent anterior cervical discectomy and fusion with internal stabilization.

Based on the medical history provided to us and in the absence of contrary information, to a reasonable degree of medical probability it is my opinion that Ms. Mardyks' herniated cervical and lumbar discs and need for surgery are causally related to the accident of October 10, 1997. It should be noted that while Ms. Mardyks has received very satisfactory results from surgery she has sustained a permanent and irreversible injury that has altered the normal mechanics of her spine at the time of her original trauma. While the surgical procedure did alleviate many of her pre-operative symptoms, there is currently no known technique, which could fully restore the normal mechanics of the spine once such injury occurred. She may suffer episodes of neck and lower back pain, which will necessitate the need for treatment in the form of physical therapy, bed rest and medications for the rest of her life.

Sincerely,

Otakar R. Hubschmann, M.D., F.A.C.S.

ORH:sw

OTAKAR R. HUBSCHMANN, M.D., P.A., F.A.C.S.
JOSEPH M. KOZIOL, M.D.
ARTHUR M. GILMAN, M.D.
Suite 409
101 Old Short Hills Road
West Orange, New Jersey 07052

NEUROLOGICAL SURGERY

Phone (973) 322-6732
Fax    (973) 322-5545

May 10, 2000

Kathleen Allen, Esq.
FISHMAN & CALLAHAN
120 Eagle Rock Avenue
East Hanover, New Jersey 07936

RE: Ronnie Mardyks
Your File No. PL1-174

Dear Mr. Viola:

    Ms. Mardyks was evaluated in our office on May 17, 1999. She was 54 years of age at that time and presented with the chief complaint of right buttock, thigh and calf pain radiating into the right big toe and second toe. Recently the pain increased significantly and she had some low back pain. This started after a car accident on October 10, 1997 and had progressed to the present symptoms. She had seen several physicians, had had physical therapy and six epidural steroid injections, as well as chiropractic therapy. After the first treatment she improved but it lasted only a few days and subsequent treatments did not affect it. She noted no bowel/bladder symptoms and no vaginal/rectal anesthesia. Her past medical history is significant for high blood pressure for which she takes medications and hypothyroidism. She is allergic to Penicillin.

    Physical examination revealed moderate paraspinal muscle spasm with positive mechanical back signs. She demonstrated no motor weakness or sensory loss to pin prick except decreased on the right side. She had no reflex change, knee jerks were 1+ and equal while the ankle jerks were 2+ and equal. There was no evidence of myelopathy. She was able to heel, toe and tandem walk. Her MRIs showed disc degeneration with subligamentous HNP at L5/S1 (second disc space from below) and probably unilateral spondylolisthesis at left L5/S1. SPEC showed focal abnormality right L5/S1.

    My impression was that Ms. Mardyks had right L5/S1 radicular symptoms with probable instability on disease of posterior joints L5/S1. I recommended a new MRI at Saint Barnabas Medical Center, CT scan L4-S1 and AP/lateral flexion/extension lumbar spine films and reevaluation.

    Ms. Mardyks was seen in follow up on June 7, 1999. She returned with increased symptoms in the right leg. Her new MRI showed a mass at right L5/S1 - HNP vs. spinal cyst. The CT scan showed probable HNP in the right L5/S1 level possibly extending beyond the foramen - far lateral HNP. This however could not be confirmed on MRI. Flexion/extension x-rays showed mild subluxation in flexion at L4/L5 and L5/S1. SPEC scan showed increased activity in the right L5/S1 joint. There was no

My impression was that Ms. Mardyks' symptoms were compatible with right-sided facet joint disease vs. spinal cyst or extensive far lateral HNP. I recommended exploration of right L5/S1 region with possible far lateral disc exploration if no spinal cyst was found. All risks and uncertainties were discussed with the patient and her mother including the possibility of needing a fusion in the future, lack of improvement and the uncertainty of diagnosis. Facet joint injection was an option but not a good one in my opinion. That was discussed and offered as well if she preferred a more conservative approach.

Ms. Mardyks was called because an MRI of the cervical spine was performed due to her reported pain and numbness in the neck and left hand in preparation for her lumbar surgery. Upon questioning the patient she dated the onset of her neck symptoms to her car accident on October 10, 1997 and she had been treated with conservative measures with some effect. Physical examination revealed no motor weakness and she was able to heel, toe and tandem walk. Reflexes were equivocal in the triceps jerks bilaterally and 1+ in the biceps jerks. Her MRI showed significant HNP at C6/C7 with cord effacement and HNP/osteophytes at C5/C6. My impression was that Ms. Mardyks has left C7 radiculopathy with no significant neurological deficit and no myelopathy. She felt that her right leg symptoms had increased but she wanted to delay her lumbar surgery. She was to proceed with physical therapy for the neck.

She returned on November 22, 1999 with no significant change. Her neck symptoms were controllable with Lodine but her right left pain significant affected her function. I recommended a repeat MRI of the lumbar spine with gadolinium after which I would reevaluate for surgery for her lumbar spine due to intractable pain.

Ms. Mardyks returned on December 6, 1999. Her new lumbar MRI was essentially unchanged showing a mass in the right L5 foramen at L5/S1 spinal cyst vs. extended HNP vs. tumor (least likely). It was decided to proceed with the lumbar surgery. All issues including risks were discussed again.

Ms. Mardyks underwent hemilaminectomy at L5 with foraminotomies L5/S1 and L4/L5 and removal of synovial cyst right L5/S1, nerve root decompression L5/S1. She tolerated the surgery well and was discharged to home.

On January 10, 2000 she returned with no leg pain and only mild back pain. Her wound was well healed. She had some neck pain and numbness in both arms at night, which disappeared in the morning. There was no change in her neurological examination.

On March 6, 2000 she returned with increased neck pain and radiation into the left arm and hand. She was dropping objects and felt the hands were weaker. There was no change on her neurological examination. Her low back and lower extremity pain had improved significantly. She was to have a new cervical MRI in consideration for surgery.

Ms. Mardyks returned on March 27, 2000 with a cervical MRI showing large HNP at C6/C7 central/lest and moderate HNP at c5/C6. There was also some small protrusion at C4/C5 and moderate HNP at c5/C6 and some small protrusion at C4/C5 and reversal of cervical spine curvature on plain x-rays. I recommended anterior cervical discectomy and fusion at C5/C6 and c6/C7 with allograft and plating. All risks including paralysis, hoarseness and the possibility of needing further surgery was discussed in detail with the patient.

On April 13, 2000 Ms. Mardyks underwent anterior cervical discectomy and fusion with internal

Based on the medical history provided to us and in the absence of contrary information, to a reasonable degree of medical probability it is my opinion that Ms. Mardyks' herniated cervical and lumbar discs and need for surgery are causally related to the accident of October 10, 1997. It should be noted that while Ms. Mardyks has received very satisfactory results from surgery she has sustained a permanent and irreversible injury that has altered the normal mechanics of her spine at the time of her original trauma. While the surgical procedure did alleviate many of her pre-operative symptoms, there is currently no known technique, which could fully restore the normal mechanics of the spine once such injury occurred. She may suffer episodes of neck and lower back pain, which will necessitate the need for treatment in the form of physical therapy, bed rest and medications for the rest of her life.

Sincerely,

Otakar R. Hubschmann, M.D., F.A.C.S.

ORH:sw

OTTAKAR R. HUBSCHMANN, M.D., F.A.C.S.
JOSEPH M. KOZIOL, M.D., F.A.C.S.
ARTHUR M. GILMAN, M.D.
SALVATORE A. INSINGA, D.O.
101 Old Short Hills Road
Suite 409
West Orange, New Jersey 07052

Neurological Surgery

Phone (973) 322-6732
Fax (973) 322-6545

May 7, 2002

Scott D. Samansky, Esq.
FISHMAN & CALLAHAN
120 Eagle Rock Avenue
East Hanover, New Jersey 07936

**RE: Ronnie Mardyks**
**Your File No. PL1-174**

Dear Mr. Samansky:

Please accept the following as an addendum to my report dated February 2, 2000.

Ms. Mardyks returned on May 8, 2000. She had returned back to work for approximately four days and approximately one month after surgery after which she developed severe left arm pain, which had since improved somewhat. She had no other symptoms. Physical examination revealed her wound was healing well. There was no evidence of myelopathy and no change in her neurological examination. Her x-rays showed partial collapse of bone graft was probable with pulling of upper screws to C5. One was in disc space C4/C5. There was possible partial collapse of C5 and reversal of spine curvature. C6 screws were in good position. My impression was that Ms. Mardyks has partial collapse of cervical construct with moderate pain and no new neurological symptoms. Based on our past experience in some such cases good healing took place despite problems with the plate.

On May 15, 2000 she returned having received significant clinical improvement and she had much less pain. Her new x-rays showed no change in position of the plate. All issues including reoperation/posterior fusion were discussed in detail. We decided to observe her for a time, as I saw no indication for further surgery at that time.

Ms. Mardyks was seen in follow up on May 22, 2000. She felt much better. Her x-rays showed improvement in cervical curvature and no change in position of construct. There was no pull up of screws and no increase in angulation. At that point, there was no indication for any further procedure.

She returned on June 26, 2000 at which time she was doing well but had neck pain when she took the collar off. Her x-rays showed no change in position of construct on spine curvature. She was to start isometric exercises.

Based on the medical history provided to us and in the absence of contrary information, to a reasonable degree of medical probability it is my opinion that Ms. Mardyk's herniated cervical and lumbar discs and need for surgery are causally related to the accident of October 10, 1997. It should be noted that while Ms. Mardyk's has received very satisfactory results from surgery she has sustained

her original trauma. While the surgical procedure did alleviate many of her pre-operative symptoms, there is currently no known technique that could fully restore the normal mechanics of the spine once such injury occurred. She may suffer episodes of neck and lower back pain that will necessitate the need for treatment in the form of physical therapy, bed rest and medications for the rest of her life.

Very truly yours,

Otakar R. Hubschmann, M.D., F.A.C.S.

ORH:sw